UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Teaubrian Clark, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.   24 – cv – 5220 |
| v. | ) | |
| | ) | District Judge _____ |
| Apple, Inc., | ) | |
| | ) | Magistrate Judge _____ |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Teaubrian Clark ("Plaintiff"), by and through his attorney Lisa L. Clay, makes the following Complaint alleging violations of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, the Illinois Human Rights Act and 42 U.S.C. § 1981, and in support of those allegations, states as follows:

## NATURE OF THE ACTION

1.   Plaintiff Teaubrian Clark worked for Defendant Apple Inc. for nearly 12 years, beginning on or about November 29, 2010.

2.   He performed exemplary work for Defendant throughout his tenure.

3.    Despite this, he was placed on an unsupportable documented coaching ("DC").

4.   Plaintiff complained internally that the DC was baseless and discriminatory.

5.   Defendant conducted a cursory investigation into Plaintiff's allegations and terminated his employment on June 7, 2022.

## JURISDICTION, PARTIES, AND VENUE

6. This Court has jurisdiction over Plaintiff's Complaint pursuant to the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

7. Plaintiff is a resident of the Northern District of Illinois.

8. Defendant Apple Inc. is multi-national corporation employing approximately 164,000 employees, many of them in this District.

9. At all relevant times, Plaintiff was an "employee" of Defendant as that term is used in Title VII, 42 U.S.C. §2000e(f) and the Illinois Human Rights Act, 775 ILCS 5/1 *et seq*.

10. At all relevant times, Defendant was the "employer" of Plaintiff as that term is used in Title VII, 42 U.S.C. §2000e(b) and the Illinois Human Rights Act, 775 ILCS 5/1 *et seq*.

11. The events giving rise to this Complaint occurred at many of Apple's locations in this District.

12. Venue in the United States District Court for the Northern District of Illinois is appropriate pursuant to 28 U.S.C. § 1391(b).

13. Plaintiff has satisfied all administrative pre-requisites by filing with the EEOC and the IDHR.

14. This claim is timely filed basd on a March 28, 2024 Right to Sue notice from the EEOC.

## FACTUAL ALLEGATIONS

**Plaintiff's Early Employment**

15. Plaintiff Teaubrian Clark worked for Defendant Apple Inc. for nearly 12 years, beginning as a Senior Manager at Apple's Oak Brook location on or about November 29, 2010.

16. Plaintiff quickly rose through the ranks to Store Leader.

17. In June of 2016 Plaintiff received a "stretch" assignment – Apple-speak for a temporary training and career expansion opportunity – as Market Leader for the entire South Chicago market.

18. Defendant expected these assignments to lead to promotion within one or two years. Despite this company practice, Plaintiff interviewed for, but was not chosen, for two Market Leader roles in 2017.

**Plaintiff's Employment in the Wake of COVID and George Flloyd's Murder**

19. Plaintiff continued to seek promotional opportunities but was repeatedly denied those openings; in or about February of 2020 he applied for and accepted a Store Leader position for the Michigan Avenue location.

20. Less than a month later, the City of Chicago implemented COVID-19 restrictions that shuttered most of Apple's retail facilities, including Plaintiff's Michigan Avenue location.

21. A few months later, in the wake of George Floyd's murder, downtown Chicago experienced serious racial unrest and violence.

22. As the only Black male Store Leader, Plaintiff felt ostracized and uncomfortable at his assigned location.

23. During the summer of 2020, Plaintiff experienced a noticeable change in how he was managed and how his managers interacted with him. White colleagues with unprofessional and/or abrasive management styles were given latitude, but he was not. White subordinates who behaved poorly were not held accountable.

3

24. Plaintiff became frustrated by inconsistent and contradictory directives from both supervisors and subordinates. Plaintiff began to perceive his workplace as riddled with gaslighting, harassment and disparate expectations.

25. Plaintiff was never given feedback suggesting any issues with his performance. He was never told to avoid arriving late or leaving early, and never counseled regarding his schedule.

**Plaintiff's ADA Dislosures**

26. In October of 2020, after struggling with the mental and physical manifestations of a racially-hostile work environment for months, Plaintiff requested a leave of absence which he requested to begin in or around November 7, 2020.

27. Plaintiff disclosed the need for leave to address "significant mental/physical health symptoms" to his non-disabled White supervisor shortly after making his request for leave.

28. Plaintiff recognized that Defendant's culture frowns on leaves and he knew that as the only Black member of senior leadership, taking leave would create problems for him.

29. As Plaintiff expected, he was ostracized and targeted for harassment, more gaslighting and significant disparate treatment when he returned to work with accomodations in March of 2021.

30. Plaintiff's immersion plan, drafted by two non-disabled White females, set him up for failure. Instead of providing him with the tools he needed to transition back to his prior role, management subjected him to a level of scrutiny he had never seen or experienced.

31. Plaintiff's mental health provider released him to full duty with no restrictions on April 20, 2021, but Plaintiff continued to seek and was provided limited scheduling accommodation to attend ongoing treatment.

32.  Despite being under the microscope and despite feeling as though he was being set up to fail, Plaintiff received a more than acceptable performance evaluation in September of 2021.

**A Baseless Documented Coaching**

33.  Out of nowhere, and outside of the documented review period, in a series of conversations that took place around December 21, 2021, Plaintiff's Non-Disabled White supervisor awkwardly advised Plaintiff that he was "losing faith" in Plaintiff's abilities and was preparing a "documented coaching" or "DC," Apple-speak for a performance improvement plan, the goal of which was supposed to be rehabilitation, not termination.

34.  Plaintiff wasn't given any details about the DC; just told that it was "being drafted."

35.  After the first conversation with his supervisor, Plaintiff reached out to a People Business Partner (part of Human Resources) to vent about his concerns that he was being singled out.

36.  In a subsequent conversation with that People Business Partner, Plaintiff was encouraged to share his concerns with a member of Employee Relations (part of Human Resources) which he also did during this time period.

37.  Plaintiff's DC flew in the face of what Defendant's process was intended to do: provide an employee feedback to improve issues of concern and remain employed. Instead, Plaintiff returned to work after the holidays knowing a DC was in the works, but his Non-Disabled White supervisor didn't provide him any details regarding the alleged deficiencies for several months.

38.  Finally, on March 9, 2022, Plaintiff was told in an in-person meeting with his supervisor that the DC was "starting now."

39.  Plaintiff was not provided a written copy of the DC; the DC was not available to him on his employee page; he was never advised of the specifics of the DC, never given an opportunity to rebut/respond, and never provided the opportunity to sign/refuse to sign.

5

40. Plaintiff's Non-Disabled White supervisor attempted to buy him off with a meagre severance, stating that he had 24 hours to accept or reject and could "avoid the DC entirely" by resigning.

41. Consistent with the purpose of Defendant's DCs, Plaintiff was supposed to receive weekly feedback and consistent constructive dialogue during the DC process. Plaintiff didn't receive either.

42. Instead, Plaintiff's Non-Disabled White supervisor advised him at some point that things were improving, but began behaving strangely and avoiding Plaintiff in late April of 2022, shortly before the DC was scheduled to end.

43. After a tortuous week of trying to get meaningful feedback, on May 3, 2022 Plaintiff asked his supervisor by text if they would be able to connect that day. Plaintiff's supervisor informed him during the resulting meeting that he "wasn't going to make it."

**Plaintiff's Complaints Regarding the Baseless DC**

44. Because Plaintiff believed his Non-Disabled White supervisor's handling of the DC process was an unprecedented violation of the purpose and policies regarding DCs, Plaintiff internally complained to a People Business Partner Leader (part of Human Resources), and the DC was "paused."

45. A member of Defendant's People Team (Apple-speak for Human Resources) interviewed Plaintiff as part of an alleged investigation on or about May 10, 2022. Plaintiff advised this individual that he believed he was being treated differently because of his race and disability status.

46. A member of Defendant's Employee Relations department (also part of Human Resources) interviewed Plaintiff, too, on or about May 12, 2022. Plaintiff advised this individual too that he believed he was being treated differently because of his race and disability status.

47. On or about May 17, 2022 Plaintiff was placed on paid adminsitrative leave and asked to step away from his job responsibilities entirely, effective the next day, May 18, 2022.

**Plaintiff's Termination**

48. Plaintiff had multple communications with various members of the alleged investigation team for several more weeks, until June 7, when Plaintiff was advised that the investigation was closed and his employment was terminated.

49. Despite the fact that the DC contained demonstrably inaccurate and false allegations about Plaintiff and his work performance, and despite the verifiable and blatant irregularies in how the DC had been administered, Defendant's "investigation" changed nothing.

**COUNT I: DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT**

50. Plaintiff reaffirms, realleges, and restates Paragraphs 1 through 49 above, and incorporates them by reference as though stated herein.

51. At all relevant times, Plaintiff was a person with a disability as defined under the ADA.

52. At all relevant times, Plaintiff had a record of being a person with a disability as defined under the ADA.

53. At all relevant times, Defendant regarded Plaintiff as being a person with a disability as defined under the ADA.

54. Defendant knew that Plaintiff suffered from a mental health disability for which he was in active treatment months before and at the time it fired Plaintiff.

55. At the time he was terminated, Plaintiff was qualified to perform the essential functions of his job with or without accommodation.

56. At the time he was terminated, Plaintiff's performance met or exceeded Defendant's legitimate expectations.

57. Defendant terminated Plaintiff's employment because he was a person with a disability.

58. Plaintiff's termination was unlawful discrimination in violation of the ADA.

59. Defendant's actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights.

60. Plaintiff has been damaged by Defendant's conduct as set forth below.

### COUNT II: RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

61. Plaintiff reaffirms, realleges, and restates Paragraphs 1 through 60 above, and incorporates them by reference as though stated herein.

62. The ADA prohibits employers from discharging any individual or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's opposition to discrimination on the basis of disability.

63. Defendant retaliated against Plaintiff because of his disability and because of his protected action by terminating him after he complained of disability discrimination.

64. Defendant discriminated against Plaintiff because of his disability and because of his protected action by terminating his employment after he complained of disability discrimination.

65. Defendant's actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights.

66. Plaintiff has been damaged by Defendant's conduct as set forth below.

8

**COUNT III: DISCRIMINATION UNDER THE ILLINOIS HUMAN RIGHTS ACT
ON THE BASIS OF DISABILITY**

67. Plaintiff reaffirms, realleges, and restates Paragraphs 1 through 66 above, and incorporates them by reference as though stated herein.

68. At all relevant times, Plaintiff was a person with a disability as defined under the IHRA.

69. At all relevant times, Plaintiff had a record of being a person with a disability as defined under the IHRA.

70. At all relevant times, Defendant regarded Plaintiff as being a person with a disability as defined under the IHRA.

71. Defendant knew that Plaintiff suffered from a mental health disability for which he was in active treatment months before and at the time it fired Plaintiff.

72. At the time he was terminated, Plaintiff was qualified to perform the essential functions of his job with or without accommodation.

73. At the time he was terminated, Plaintiff's performance met or exceeded Defendant's legitimate expectations.

74. Defendant terminated Plaintiff's employment because he was a person with a disability.

75. Plaintiff's termination was unlawful discrimination in violation of the IHRA.

76. Defendant's actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's protected rights.

77. Plaintiff has been damaged by Defendant's conduct as set forth below.

**COUNT IV: RETALIATION UNDER THE ILLINOIS HUMAN RIGHTS ACT
ON THE BASIS OF DISABILITY**

78. Plaintiff reaffirms, realleges, and restates Paragraphs 1 through 77 above, and incorporates them by reference as though stated herein.

79. The Illinois Human Rights Act prohibits employers from discharging any individual or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's opposition to discrimination on the basis of disability.

80. Defendant retaliated against Plaintiff because of his disability and because of his protected action by terminating him after he complained of disability discrimination.

81. Defendant discriminated against Plaintiff because of his disability and because of his protected action by terminating his employment after he complained of disability discrimination.

82. Defendant's actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's protected rights.

83. Plaintiff has been damaged by Defendant's conduct as set forth below.

## COUNT V: DISCRIMINATION UNDER TITLE VII

84. Plaintiff reaffirms, realleges, and restates Paragraphs 1 through 83 above, and incorporates them by reference as though stated herein.

85. At all relevant times, Plaintiff belonged to a protected class (Black).

86. At all relevant times, the actions of Defendant and its agent as described above were sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

87. At all relevant times, the actions of Defendant and its agents and as described above, were unlawful employment practices insofar as they had the effect of discriminating against, depriving and intending to deprive equal employment to, and otherwise adversely affeting Plaintiff because of his race in violation of Title VII.

88. At all relevant times, Plaintiff was meeting and did meet Defendant's legitimate employment expectations.

89. At all relevant times, Defendant intentionally discriminated against Plaintiff based on his race by treating similarly-situated non-Black employees better than Plaintiff and denying him equal opportunities because of his race insofar as they were not placed on baseless DCs and/or terminated.

90. Plaintiff's termination, an adverse employment action, was discriminatory.

91. Defendant's actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights.

92. Plaintiff has been damaged by Defendant's conduct as set forth below.

**COUNT VI: RETALIATION UNDER TITLE VII**

93. Plaintiff reaffirms, realleges, and restates Paragraphs 1 through 92 above, and incorporates them by reference as though stated herein.

94. Title VII prohibits employers from discharging any individual or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's opposition to discrimination on the basis of race.

95. Defendant retaliated against Plaintiff because of his race and because of his protected action by terminating him after he complained of race discrimination.

96. Defendant discriminated against Plaintiff because of his race and because of his protected action by terminating his employment after he complained of race discrimination.

97. Defendant's actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights.

98. Plaintiff has been damaged by Defendant's conduct as set forth below.

## **COUNT VII: DISCRIMINATION UNDER THE ILLINOIS HUMAN RIGHTS ACT**

99. Plaintiff reaffirms, realleges, and restates Paragraphs 1 through 99 above, and incorporates them by reference as though stated herein.

100. Plaintiff has performed all conditions precedent to filing this case under the IHRA.

101. Defendant, as an employer, is subject to the requirements of the IHRA.

102. At all relevant times, Plaintiff belonged to a protected class (Black).

103. Defendant, as an employer, has an obligation to ensure that its employees are not discriminated against.

104. Defendant knows that it has an obligation to ensure that employees are not subjected to discrimination.

105. Defendant discriminated against Plaintiff because of his race by changing the terms and conditions of his employment, subjecting him to increased scrutiny and a baseless DC, and subjecting him to other adverse terms and conditions of employment in violation of the IHRA.

106. Defendant has engaged in a policy, pattern, and practice of discriminating and condoning discrimination against employees.

107. By engaging and condoning discriminatory conduct, Defendant discriminated against Plaintiff.

108. At all relevant times, Plaintiff was meeting and did meet Defendant's legitimate employment expectations.

109. At all relevant times, similarly situated non-Black employees were treated more favorably than Plaintiff insofar as they were not terminated.

110. Plaintiff's termination, an adverse employment action, was discriminatory.

111. Defendant's actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's protected rights.

112. Plaintiff has been damaged by Defendant's conduct as set forth below.

## **COUNT VIII: RETALIATION UNDER THE ILLINOIS HUMAN RIGHTS ACT**

113. Plaintiff reaffirms, realleges, and restates Paragraphs 1 through 112 above, and incorporates them by reference as though stated herein.

114. Plaintiff has performed all conditions precedent to filing this case under the IHRA.

115. Defendant, as an employer, is subject to the requirements of the IHRA.

116. At all relevant times, Plaintiff belonged to a protected class (Black).

117. The Illinois Human Rights Act prohibits employers from discharging any individual or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's opposition to discrimination on the basis of race.

118. Defendant, as an employer, has an obligation to ensure that its employees are not discriminated against for making complaints of discrimination.

119. Defendant knows that it has an obligation to ensure that employees are not subjected to discrimination for making complaints.

120. Defendant retaliated against Plaintiff because of his race and because of his protected action by terminating him after he complained of race discrimination.

121. Defendant discriminated against Plaintiff because of his race and because of his protected action by terminating his employment after he complained of race discrimination.

122. Defendant's actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's protected rights.

123. Plaintiff has been damaged by Defendant's conduct as set forth below.

**COUNT IX: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

124. Plaintiff reaffirms, realleges, and restates Paragraphs 1 through 123 above, and incorporates them by reference as though stated herein.

125. At all relevant times, Plaintiff belonged to a protected class (Black).

126. At all relevant times, Plaintiff was meeting and did meet Defendant's legitimate employment expectations.

127. At all relevant times, Defendant intentionally discriminated against Plaintiff based on his race by treating similarly-situated non-Black employees better than Plaintiff and denying him equal opportunities because of his race insofar as they were not placed on baseless DCs and/or terminated.

128. At all relevant times Defendant maintained discriminatory and harassing employment practices that constitute illegal race discrimination in violation of 42 U.S.C. § 1981.

129. Plaintiff's termination, an adverse employment action, was discriminatory.

130. Plaintiff was subjected to and harmed by Defendant's discrimination based on his race.

131. Defendant's actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights.

132. Plaintiff has been damaged by Defendant's conduct as set forth below.

**PRAYER FOR RELIEF**

133. As a direct and proximate result of Defendant's illegal conduct Plaintiff has lost, and is expected to continue to lose, income in the form of wages; bonuses; stock options; prospective retirement and social security; and other benefits in a sum to be proven at trial.

134. As a direct and proximate result of Defendant's illegal conduct Plaintiff has suffered and continues to suffer emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff Teaubrian Clark seeks damages as permitted by the ADA, Title VII, the Illinois Human Rights Act and § 1981 including, but not limited to:

a. lost wages and benefits in an amount to be proven at trial;

b. reinstatement and/or front pay and benefits in an amount to be proven at trial;

c. compensatory damages in an amount to be proven at trial;

d. attorneys' fees and costs;

e. punitive damages;

f. all available interest;

g. offset of tax liability; and

h. any other relief the Court may deem just and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial as provided by Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ *Lisa L. Clay*

Lisa L. Clay Attorney at Law, Ltd.
(ARDC No. 6277257)
2100 Manchester Rd., Suite 1603
Wheaton, IL 60187
Phone: 630.456.4818
Email: lisa@clayatlaw.com